Dionisio Trigo, Plaintiff and Appellant, v. The People of Puerto Rico, Defendant and Appellee.

No. 6614.   Argued April 21, 1936.—Decided April 7, 1937.

*Henry G. Molina* and *D. Trigo*, for appellant. *B. Fernández García,* *Attorney General,* and *Harry B. Llenza, Law Clerk,* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

The plaintiff-appellant, alleging that he was the owner of a rural property of 746.40 acres (*cuerdas*), situated in the Municipality of Patillas, brought suit against the People of Puerto Rico to recover said property.

The plaintiff alleged that he acquired title to the realty in question by purchase from Carmen Brac Brignoni, Higinio Allende and his wife, Isabel Caraballo, by a deed which was recorded in the registry of property; that his predecessors in title acquired the property by purchase from the Banco Territorial y Agrícola de Puerto Rico, which was also recorded; that the said bank became the owner of the land involved upon being awarded the same at public auction held in a foreclosure proceeding which had been instituted against Juan Pablo Giordani y Semidey for the enforcement of a claim secured by a mortgage constituted by Juan Pablo

Giordani y Semidey in favor of the foreclosing bank; that said Giordani y Semidey acquired the said property by purchase from Eduardo Cervoni y Mari, who in turn acquired it by grant from the Superior Board of Adjustment and Sale of Unappropriated Lands of the Island of Puerto Rico (*Junta Superior de Composición y Venta de Terrenos Realengos de la Isla de Puerto Rico*), on March 1, 1875, said grant being duly recorded in the proper registry. It was further alleged that plaintiff and the former owners of the property have possessed the same quietly, openly, peacefully, in good faith, and with just title, uninterruptedly from the year 1875 to the month of October 1929; that on the latter date the plaintiff was ousted against his will and without his consent by the defendant who holds no ownership right or interest in the property; and that the defendant is at present in possession of the realty, depriving the plaintiff of the use and enjoyment of his property. Prayer was made for a judgment declaring plaintiff to be the sole owner of the land and directing that he be put in possession thereof.

The answer filed by the People of Puerto Rico admitted the various transfers of the property in question, including the last one made by Mrs. Brac and Mr. Allende in favor of the plaintiff-appellant, and that all said transfers appear recorded in the registry; but it specifically denied that Eduardo Cervoni y Mari acquired the property by grant from the aforesaid Superior Board or that any grant was recorded in favor of that gentleman.

The representatives of the defendant Government alleged that the property in question was formed by a consolidation of five parcels, four of one hundred acres each and one of two hundred acres, all of which belonged to the People of Puerto Rico and which were conditionally granted by the Superior Board of Adjustment and Sale of Unappropriated Lands to several persons in the year 1875, the entire tract coming into the hands of the plaintiff-appellant after several transfers; that all the conditional grants made by the said

board were recorded in the registry; that in each and every one of said grants an express condition was included to the effect that the grant would be revoked and the lands would revert to the state upon the failure of the respective grantees to cultivate within one year, one-tenth of said land, and within ten years, one-half of the property; that the aforesaid condition was expressly set forth in every entry made of each property when the grants were recorded; and lastly, that in the year 1895, the Superior Board which had made said grants, revoked and annulled each and every one of them because the grantees had not complied with the conditions that had been imposed upon them.

The defendant denied that either the plaintiff or his predecessors in interest had ever held possession of the property; or that the Government had deprived them of such possession; or that the plaintiff was the owner or held title to the property in litigation. It set up that neither the plaintiff nor his predecessors in interest now have, or ever had any title, as when they acquired the property they all had notice of the condition recorded in the registry as well as of the fact that said grants had been revoked and annulled by the Superior Board; that in the year 1896 the Mayor and Secretary of the Municipality of Patillas, by order of the Superior Board, seized the lands granted; that the Crown of Spain was in possession of them up to 1898, when it ceded them to the Government of the United States; that the latter transferred them to the People of Puerto Rico on July 1, 1902, by an Act of Congress, and that from that date on the defendant has been in quiet, public, and peaceful possession of the realty, without interruption, with a good and sufficient title, and in good faith.

The People in its cross complaint alleged: That the mortgage executed by Juan P. Giordani in favor of the Banco Territorial y Agrícola de Puerto Rico on April 13, 1896, was null and void because the same had been executed after the revocation and annulment of the grants and after the seizure

of the lands pursuant to the orders of the Superior Board of July 26 and August 1, 1895, and further, because Juan P. Giordani y Semidey never acquired the right to freely alienate the property nor ever held title thereto; and that all the conveyances made subsequent to said mortgage and the records thereof in the registry, are void and without any legal effect, as they were made after the property had reverted to the Crown of Spain in consequence of the noncompliance with the conditions set forth in the grant. It prayed for a judgment declaring the People of Puerto Rico to be the sole owner of the property in controversy and directing the cancellation of all the records of liens or conveyances made subsequent to the forfeiture of the grants and the reversion of the lands to the Government.

The lower court rendered judgment upholding the contentions of the defendant, and the present appeal has been taken from that judgment.

From the documentary evidence incorporated in the record of the case at bar, the following facts have been clearly established as material and undisputed:

1. That Eduardo Cervoni y Mari, after having acquired from the original grantees the five parcels in question subject to the condition already mentioned, consolidated them into one property of 600 acres; that by a deed dated June 8, 1892, said Cervoni assigned, released, and conveyed to Antonio Giordani y Semidey *all the rights of action and interests that he had or might have* in the consolidated property, and subrogated the grantee to all his rights and interests, declaring *that he granted him sufficient power, final and irrevocable, to take, through proper channels and in proper form, whatever steps or proceedings might be necessary to secure from the Government or the Treasury the right to freely alienate the six hundred acres of land in question;* and in the event he secured it, he could dispose of the property, either wholly or partially, as his own; and that it was stipulated in said deed that the grantor, Mr. Cervoni, would give no warranty against eviction, nor be bound in any other manner, and that the transfer was made *at the risk of the grantee and without any subsequent liability on the part of the grantor, and that the grantee accepted all the consequences of the transfer as made.*

2. By a deed dated May 4, 1895, Antonio Giordani y Semidey declared that the acquisition of the property of 600 acres was made for the benefit of Juan Pablo Giordani y Semidey, *and that it being necessary to ratify and confirm the rights of ownership and control held by said gentleman therein,* he executed in his favor a real sale of the property; and he further stated that he had caused a survey to be made of the property and that the same had an area of 746.40 acres. When recording this conveyance (folio 19 back, volume 7 of Patillas, 2d inscription), the registrar stated that "Don Juan Pablo Giordani y Semidey records the *ownership* of this property by virtue of said titles"; but in the body of the entry, reference is made several times to the deed of June 8, 1892, giving rise to the first record of the property when the latter was consolidated, in which entry (folio 18, vol. 17 of Patillas) it is stated that Don Antonio Giordani y Semidey *records the transfer in his favor subject to the said conditions.*

3. That in each and every one of the first records of the five parcels which were consolidated to form the property in litigation, it was stated that the grant of the land was made *subject to the compulsory condition of revocation of the grant and reversion of the land to the state upon the failure to cultivate for the benefit of agriculture, one-tenth of the land within the precise period of one year, one-fourth thereof within four years, and one-half thereof within ten years.*

4. That on May 14, 1896, by order of the Central Administration of Revenues and Taxes of August 14, 1895, and March 30, 1896, there were seized two of the parcels of 100 acres (*cuerdas*) on the ground of noncompliance with the conditions under which the various grants were made; and as the parcels had been consolidated and were in the possession of Juan P. Giordani, they were deposited with the said Giordani, who accepted them assuming full responsibility for such deposit.

5. That after said lands had been seized by the state and received on deposit by Juan P. Giordani, the latter mortgaged them to the Banco Territorial y Agrícola by a deed dated April 13, 1896, as security for a loan.

6. That the Superior Board held a meeting on September 19, 1896, where consideration was given to seven cases of grants made to Francisco Cervoni, Juan B. Massari, Juan Rivera, and P. Giordani, for 800 acres of land, which Juan P. Giordani attempted to acquire by adjustment with the Treasury. In the record (defendant's

exhibit No. 9) it is stated that the said Juan P. Giordani *was in possession of the lands at the time the seizure was made and he was appointed depositary;* and that his character as such depositary did not legally modify in any way his prior status of possessor on which he bases his right to the adjustment prayed for.

It is a fact admitted by both parties that the decisions or resolutions of the Superior Board decreeing the forfeiture of the grants and the reversion of the lands to the state, do not appear recorded in the registry of property. When the certificates regarding said resolution, issued by the Commissioner of the Interior, were offered in evidence, the plaintiff objected to their admission, first, because they were not recorded and hence could not be admitted to the prejudice of the plaintiff, who alleged the status of a third person; second, because said certificates partook of the nature of self-serving evidence, inasmuch as the defendant is the People of Puerto Rico, and we are dealing with a matter which is under the jurisdiction of the Department of the Interior, and hence, the Commissioner of the Interior may obtain a certificate of whatever he wishes and bring it into court; and third, because the original records should have been produced. The certificates were admitted in evidence and an exception was taken by the plaintiff. The last two grounds for the objection were cured during the trial of the case. It appears from the transcript of the evidence (pages 53 and 54) that the defendant presented in court the original records and placed them at the disposal of the plaintiff for any proper purpose. And not only did the defendant take no advantage of the opportunity thus offered to him to compare the certificates with the originals in order to determine any discrepancy that might exist, but he renounced it, and stated that he did not want it understood ''that we even want to suggest that these are not exact copies.''

The only legal question for us to decide is whether the plaintiff Dionisio Trigo has at any time acquired full title to the property he is seeking to recover and is, therefore,

entitled to a judgment which will put him in the possession and enjoyment of the same, or whether, on the contrary, the People of Puerto Rico is entitled to remain in possession as it has never conveyed to any person the ownership of the land in question.

■ * The plaintiff assigns as error the holding of the lower court, that the People of Puerto Rico or its predecessor in interest, the Crown of Spain, had reacquired the property in question, *to the prejudice of a third person,* by virtue of the decision of the Superior Board of Adjustment and Sale of Unappropriated Lands.

The plaintiff did not specifically allege in his complaint his status as a third person, nor did he do this, as he could have done it, by filing an answer to the cross complaint presented by the People of Puerto Rico, wherein the nullity of the grants was alleged. The issue was raised for the first time in the brief offered in support of the present appeal.

This court has already decided that in an action for the recovery of real property, the defenses of prescription and of being a third person must be specific and can not be raised for the first time on appeal. See *Heirs of Torres* v. *Torres et al.,* 29 P.R.R. 847; *Hernández et al.* v. *Hernández et al.,* 31 P.R.R. 643.

■ Disregarding the technical defect of his failure to allege his status as a third person, let us see now whether the plaintiff is a third person, and if so, whether he had sufficient notice from the registry of property of the fact that Carmen Brac Brignoni and the Allende spouses did not and could not convey to him the title to the land in controversy.

Our Mortgage Law provides:

"Art. 27.—For the purposes of this law, a third person shall be considered one who has not been a party to the recorded instrument or contract. *

" *     *     *     *     *     *     *

* In connection with the question here considered and decided, see page 226, *infra.*

"Art. 33.—Instruments or contracts which are null under the law are not validated by their admission to record.

"Art. 34.—Notwithstanding the provisions of the foregoing article, instruments or contracts executed or entered into by a person who, according to the registry, has a right to do so, shall not be invalidated with regard to third persons after they have been recorded, even though the interest of such party should subsequently be annulled or terminated by virtue of a prior deed which was not recorded or for reasons which do not clearly appear from said registry."

Undoubtedly the plaintiff was not a party and did not intervene in any way in the acts or contracts recorded prior to the date of execution of the deed of sale in his favor. But on the date of such execution, January 22, 1918, the following appeared in the registry of property:

A. In the first record of each of the four parcels of one hundred acres, as well as in that of the 200-acre parcel, it was stated that the property had been acquired by grant from the Supreme Board subject to the condition of revocation and reversion to the State upon failure to make the cultivation agreed upon for the benefit of agriculture, within the time specified in the grant.

B. In the record of the consolidation of the five parcels effected by Eduardo Cervoni y Mari, and in that of the sale to Antonio Giordani y Semidey, it was stated:

"Second.—The grantor, Eduardo Cervoni, subrogates the grantee Mr. Giordani, in his place and rights, and grants him sufficient power to take, through proper channels and in proper form, whatever steps or proceedings might be necessary to secure from the Government or from the Treasury, the right to freely alienate the six hundred acres of land in question; and in the event he secures it, he can dispose of the property, either wholly or partially, as his own. Third.—It is an essential condition of this transfer that the grantor, Cervoni, gives no warranty against eviction, nor be bound in any other manner, as the grantee, Giordani, shall have no right to exact any measure of responsibility from Cervoni nor make any claim against him by reason of this transfer, since it has been so agreed. So that Cervoni is only bound to the extent provided in this deed, and to nothing else, and therefore he makes this transfer at the risk of the grantee, without any subsequent liability on the part of the

grantor, and the grantee accepts all the consequences of the transfer as made."

C. When the deed whereby Antonio Giordani y Semidey conveyed the property to Juan P. Giordani y Semidey, who was the true owner, was recorded, it was stated in the registry:

" . . . and that since the said deed of the eighth of June, one thousand eight hundred and ninety-two was not accepted by Antonio Giordani y Semidey for himself but at the request of Juan Pablo Giordani Semidey, the true owner of the property, it is natural that the latter will accept the present deed in connection with the aforesaid former deed, under the same conditions therein set forth and without any subsequent liability on the part of Antonio Giordani y Semidey. Fifth.—Juan Pablo Giordani y Semidey, well informed of the instrument, stated: that he accepts the same in its entirety as drafted, since it accords with the true facts and is therefore a proper deed."

The said entries in the registry of property, which according to the plaintiff are the only ones that bind him, doubtless contain sufficient data to inform and advise the Banco Territorial y Agrícola, its grantees, and the plaintiff that neither the original grantees nor Juan P. Giordani acquired the ownership right to freely dispose of the property by virtue of the grants made by the Superior Board of Adjustment and Sale of Unappropriated Lands, nor did they acquire such ownership rights by reason of any act of the State, which by the clear and precise terms of the grant had only conveyed to the grantees the right to obtain the same by complying with the conditions to which we have already referred. And it is evident that Eduardo Cervoni y Mari so understood it when, at the time of transferring the property to Giordani, he confined himself to a subrogation or assignment of his rights and claims, together with a power of attorney enabling the grantee to continue taking the necessary steps until he could secure from the Government the right to freely alienate the 600 acres of land. By those words the grantor expressly notified the grantee, that he, the grantor, did not have title, that is, the right to freely dispose of the realty.

And in order to make clearer his legal position, the grantor stated that he was not bound by any warranty against eviction, nor by any subsequent liability, and that the grant was made *at the risk* of the grantee. And all these conditions were accepted by Juan P. Giordani, the mortgage debtor of the Banco Territorial y Agrícola.

· As the state of the record at the time that Giordani mortgaged to the bank the property in question is the one that we have described, we fail to see how Giordani, who did not have the ownership or right to freely alienate the property, could mortgage what he did not own. The only thing he could have mortgaged was what he had acquired from Cervoni, that is, the right held by the latter to claim and secure from the Government the power to freely dispose of the property. And the purchasers after the foreclosure of the mortgage could not have acquired the title nor the right to freely alienate the property, because the deed of sale executed after the auction sale could merely convey to the vendee the rights that, according to the registry, belonged to the mortgage debtor. We have seen that the latter did not have title nor the right to freely alienate the realty. It has already been settled by a decision of this Supreme Court that if the deed by which Spain appears to have conveyed unappropriated lands is not valid according to law, the People of Puerto Rico, as grantees of all the properties and rights of the Crown of Spain, may recover said lands from any person holding them under a defective title by reason of the invalidity of the title of the original grantee. See *People v. Riera*, 27 P.R.R. 1.

■ Appellant in his brief argues that, as he was a third person, he had a right to rely on the entries of the registry, and that he can not be prejudiced by extrinsic facts of which he had no notice. The extrinsic facts to which the appellant refers, that is, the declaration of forfeiture of the grants, the reversion of the land to the Government for breach of the

conditions, and the seizure of the land by the Government were specifically alleged by the People of Puerto Rico in its cross complaint. It does not appear from the record that the appellant, who as respects the cross complaint of the People of Puerto Rico stood in the same legal position as a defendant, filed an answer to said cross complaint. And by failing to answer the cross complaint and to allege his status as a third person, the plaintiff impliedly admitted the facts alleged in the cross complaint. He can not raise for the first time on appeal the defense that he is a third person. *Heirs of Torres* v. *Torres et al., supra.*

█ Entirely disregarding in the instant case the matter appearing in judicial records and other documents outside the registry, let us see whether in the entries made in the latter there is sufficient information to give to the appellant, Dionisio Trigo, notice of warning of the fact that the State never conveyed to the grantees of the land in controversy an absolute title thereto, that is, that the State never parted with its title to the land.

In each and every first entry respecting the five parcels which were later consolidated into the 600-acre property that the plaintiff is seeking to recover, the right of the grantee is stated in these words:

"Evidences his ownership of this property prior to the promulgation of the Mortgage Law, by grant from the Superior Board of Public Lands, as per the instrument executed by the Governor of this Island, Mr. Sanz, on February 26, 1875, attested by the Secretary, Mr. Antonio M. de Aldrey, subject to the compulsory condition of revocation of the grant and reversion of the land to the State upon the failure to cultivate for the benefit of agriculture, one-tenth of the land within the period of one year, one-fourth thereof within four years, and one-half thereof within ten years."

We have already stated what appears from the first record of the property which resulted from the consolidation of the five parcels, and which is the one sought to be recovered by the plaintiff.

A mere reading of these entries is sufficient to give notice to any subsequent purchaser of the fact that the State, upon granting these lands in 1875, did not divest itself of its own ownership rights and only conveyed to the grantees the right to acquire title by complying with the express condition of cultivating, for the benefit of agriculture, the lands within the terms specified in the grant or by means of an adjustment with the Government. The registry gave notice to subsequent purchasers that the original grantees, under the conditions specified in the grant, had a maximum term of ten years, that is, up to 1885, to acquire the title in fee to the tenement by cultivating one-half of its lands; and similarly, by the first entry on folio 18, volume 7 of Patillas, it gave notice to the Banco Territorial y Agrícola, Carmen Brac Brignoni, the Allende spouses, and the plaintiff of the fact that Eduardo Cervoni y Mari, who was the one that consolidated the five parcels, had acknowledged that he did not hold an absolute title to the land but merely the right to claim and take the necessary steps to obtain from the Government the free disposition of the 600 acres. And it should be noted that the said assignment of rights and actions, without a warranty against eviction and *at the risk* of the purchaser, was made by Eduardo Cervoni to Antonio Giordani y Semidey by a deed dated June 8, 1892, that is, seven years after the expiration of the maximum term fixed by the original grants and by the very registry to acquire the title by cultivating the lands. We do not think that it would be possible to use a clearer language to express an admission of the failure to comply with the conditions imposed by the grant and to inform the purchaser that the title conveyed did not amount to a fee but merely to the right to claim such fee, than the language used by Mr. Cervoni in assigning, for the modest sum of three hundred dollars, all his rights and actions to claim from the Government the fee to the realty.

Neither the Banco Territorial y Agrícola, nor plaintiff's vendors, nor the plaintiff himself can allege ignorance of these records made in the registry of property, which are clear, precise, and definite. They all are bound by such records. If Antonio Giordani y Semidey only acquired the rights and actions to take the necessary steps in order to secure the absolute ownership of the realty, that was the only thing that he could have conveyed to Juan P. Giordani, and the only thing that the latter could have mortgaged with the bank and, lastly, the only thing that the plaintiff could have acquired through the several conveyances after the record of the deed on June 8, 1892, since it is an elementary principle of law, that no one can give who does not possess, *nemo dat qui non habet.* And nothing appears from the registry to show that Juan Giordani or his heirs ever took steps to secure from the Government the ownership of the realty.

■ We should not overlook the position of each contending party. The defendant Government is in possession of the realty and alleges that it holds, and never lost, the title thereto. The plaintiff, on the contrary, alleges that he has acquired the ownership and hence that he is entitled to the acknowledgment of his ownership and to be put in possession. In such legal situation, the plaintiff has the burden of proof to establish his allegation that he is the owner in fee. See *Carreras* v. *Pérez,* 42 P.R.R. 347; *Merle* v. *Ramos et al.,* 31 P.R.R. 103; *Rivera* v. *Castro,* 20 P.R.R. 464; *Rosaly* v. *Graham,* 16 P.R.R. 156; section 470 of the Code of Civil Procedure, 1933 ed. The plaintiff has failed to prove his alleged title to the land.

The plaintiff attempted to prove that the condition imposed by the Government for the acquisition of the ownership had been performed by his predecessors in interest and introduced some testimonial evidence tending to show that coffee had been planted in the property, such plantations having been destroyed by the hurricane of 1899 known as San

Ciriaco Hurricane. In order to rebut this evidence the Government introduced certain records of the Department of the Interior containing the proceedings which show that in 1896 the Government seized two of the parcels of 100 acres each for failure to comply with the conditions imposed in connection with the grant; and it also introduced the minutes of the meeting held by the Superior Board on September 19, 1896, or two years prior to the San Ciriaco Hurricane, wherein there was submitted the petition of Juan P. Giordani for acquisition of the property by adjustment, stating that Giordani was in possession of the 600 acres at the time of such seizures and had been appointed as depositary of the lands. Such evidence was admissible to rebut the testimony introduced by the plaintiff.

We are of the opinion that the plaintiff has failed to prove satisfactorily that he is the owner of the property with sufficient title to give him the right to claim the possession of the land in question, and that the judgment appealed from must be affirmed.

Mr. Justice Wolf dissented.